J-S62012-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| DARRYL RICHARD HARRIS | |
| Appellant | No. 2036 MDA 2015 |

Appeal from the Judgment of Sentence October 28, 2015
In the Court of Common Pleas of Lycoming County
Criminal Division at No(s): CP-41-CR-0001431-2014

BEFORE:  GANTMAN, P.J., DUBOW, J., and JENKINS, J.

MEMORANDUM BY JENKINS, J.:                **FILED SEPTEMBER 28, 2016**

Darryl Richard Harris ("Appellant") appeals from the judgment of sentence entered in the Lycoming County Court of Common Pleas following his jury trial convictions for possession with intent to deliver ("PWID"),[1] delivery of a controlled substance,[2] criminal use of a communication facility,[3] fleeing or attempting to elude a police officer,[4] possession of a controlled substance,[5] and conspiracy.[6]  We affirm.

---

[1] 35 P.S. § 780-113(a)(30).

[2] 35 P.S. § 780-113(a)(30).

[3] 75 Pa.C.S. § 7512(a).

[4] 75 Pa.C.S. § 3733(a).

[5] 35 P.S. § 780-113(a)(30).

The relevant facts and procedural history of this appeal are as follows. On August 14, 2014, a confidential informant ("CI"), helped Pennsylvania state police set up a controlled purchase of crack cocaine. N.T., 4/22/15, at 16-17. After arranging a meeting through text messages with co-defendant Markese Askew, the CI parked her vehicle in front of a bowling alley with $300.00 police had given her to purchase drugs. *Id.* at 20-26. Appellant drove a red vehicle past the CI, and passenger Mr. Askew waved at the CI, indicating that she should follow them. *Id.* at 29. The CI followed the vehicle until it pulled over. *Id.* at 30. She pulled over, exited her vehicle, entered the back seat of Appellant's vehicle, and sat directly behind Appellant, the driver. *Id.* The CI handed the money to Appellant, and Mr. Askew handed her bags of drugs, which she placed in her pocket before returning to her car. *Id.* at 31. She returned to meet with Officer Whipple and gave him the drugs. *Id.*

After the controlled purchase, Officer William Holmes, who was driving an undercover vehicle, and Officer Jeff Paulhamus, who was in a marked police vehicle, followed Appellant's vehicle. *Id.* at 78, 89. Officer Paulhamus initiated his police lights, and Appellant did not pull over, but sped away until he eventually crashed. *Id.* at 78, 89. Appellant ran from

*(Footnote Continued)* ————————————

[6] 18 Pa.C.S. § 903(c).

- 2 -

the vehicle. *Id.* The officers parked their vehicles and chased Appellant on foot until Officer Paulhamus took Appellant into custody. *Id.* at 78, 90.

The CI was unable to identify Appellant in a photo array that consisted of eight photographs, one of which was Appellant. N.T. 12/16/14, at 3. However, at a preliminary hearing, the CI positively identified Appellant when he was sitting next to his co-defendant at the defense table. *Id.* at 13. She felt confident that she had correctly identified Appellant at the preliminary hearing because she was able to see his profile, having observed it in the car when she purchased the drugs. *Id.* at 18. The photo array image of Appellant did not depict his profile. *Id.*

Appellant filed several pre-trial motions, including a motion to preclude the CI's in-court identification of Appellant due to the suggestive nature of the identification at the preliminary hearing. The court conducted an omnibus pre-trial motion hearing on December 16, 2014 and denied Appellant's motion to preclude the in-court identification.

On April 22, 2015, a jury convicted Appellant of the aforementioned crimes. On October 28, 2015, the court sentenced Appellant to an aggregate sentence of thirty-six (36) to seventy-two (72) months' incarceration.[7] On November 19, 2015, Appellant timely filed a notice of appeal. Both Appellant and the trial court complied with Pa.R.A.P. 1925.[8]

_____

[7] The court imposed consecutive sentences of eighteen (18) to thirty-six (36) months' incarceration for PWID and for fleeing and eluding. The court
*(Footnote Continued Next Page)*

Appellant raises the following issue for our review:

> DID THE SUPPRESSION COURT ERR BY FAILING TO PRECLUDE THE CONFIDENTIAL INFORMANT FROM TESTIFYING AT TRIAL REGARDING HER IDENTIFICATION OF THE APPELLANT DUE TO THE UNDULY SUGGESTIVE NATURE OF THE ORIGINAL IDENTIFICATION AT THE PRELIMINARY HEARING?

Appellant's Brief at 7.

Appellant argues the CI's identification of him at the preliminary hearing was unduly suggestive because the CI was unable to identify him in a photo array but later positively identified him when he was handcuffed, dressed in an orange prison jumpsuit, and sitting next to his co-defendant at the preliminary hearing. He claims that this was an unduly suggestive identification that should have precluded the CI from identifying Appellant in court, and that he is entitled to a new trial in which the CI is precluded from identifying him. We disagree.

_(Footnote Continued)_ ⎯⎯⎯⎯⎯⎯⎯⎯

imposed a concurrent sentence of twelve (12) to twenty-four (24) months' incarceration for criminal use of a communication facility, and the rest of Appellant's convictions merged for sentencing purposes.

[8] On November 23, 2015, the court ordered Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), and he timely complied the next day. The court issued a Pa.R.A.P. 1925(a) opinion on February 11, 2016. In its opinion, the court found Appellant waived his issue as to the suppression ruling because the issue presented in his concise statement was overly broad and vague. The court relies on its opinion and order of January 14, 2015 for the reasons it denied Appellant's suppression motion. Because Appellant raised his issue at the suppression hearing, and the court addressed his issue, we do not find the issue waived based on the quality, or lack thereof, of Appellant's concise statement.

Preliminarily, "it is the appellant's duty to ensure that the certified record is complete for purposes of review." *Commonwealth v. Little*, 879 A.2d 293, 301 (Pa.Super.2005), *appeal denied,* 890 A.2d 1057 (Pa.2005) (quoting *Commonwealth v. Dehart*, 730 A.2d 991, 993 n. 1 (Pa.Super.1999), *appeal denied,* 745 A.2d 1218 (Pa.1999)). "A failure by Appellant to insure that the original record certified for appeal contains sufficient information to conduct a proper review constitutes waiver of the issue sought to be examined." *Commonwealth v. Martz*, 926 A.2d 514, 525 (Pa.Super.2007). "[I]f the appellant caused a delay or other problems in transmitting the certified record, then he or she is not entitled to relief and the judgment of the court below should be affirmed." *Commonwealth v. Bongiorno*, 905 A.2d 998, 1001 (Pa.Super.2006).

Here, the transcript from the preliminary hearing is not in the certified record. We decline to affirm on the basis of waiver, however, because we are able to conduct a review of the issue, and neither party contests that the CI identified Appellant at the preliminary hearing.

Our standard of review for a trial court's denial of a suppression motion is as follows:

> In addressing a challenge to a trial court's denial of a suppression motion we are limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Since the Commonwealth prevailed in the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the

context of the record as a whole. Where the record supports the factual findings of the trial court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error.

*Commonwealth v. Cauley*, 10 A.3d 321, 325 (Pa.Super.2010) (quoting *Commonwealth v. Bomar,* 826 A.2d 831, 842 (Pa.2003)). "Our standard of review is restricted to establishing whether the record supports the suppression court's factual findings; however, we maintain *de novo* review over the suppression court's legal conclusions." *Commonwealth v. Guzman*, 44 A.3d 688, 692 (Pa.Super.2012) (citation omitted). Additionally, when reviewing the suppression court's rulings, we consider only the suppression record. *See In re L.J.,* 79 A.3d 1073, 1085 (Pa.2013) ("it is inappropriate to consider trial evidence as a matter of course, because it is simply not part of the suppression record, absent a finding that such evidence was unavailable during the suppression hearing.").

"When an out-of-court identification is alleged to be tainted, an in-court identification may still stand if, considering the totality of the circumstances, the identification had an origin sufficiently distinguishable to be purged of the primary taint." *Commonwealth v. Kendricks*, 30 A.3d 499, 506 (Pa.Super.2011), *appeal denied,* 46 A.3d 716 (Pa.2012) (internal quotations and citation omitted). The Commonwealth must prove this independent basis for identification through clear and convincing evidence. *See Commonwealth v. Davis*, 17 A.3d 390, 394 (Pa.Super.2011), *appeal denied*, 29 A.3d 371 (Pa. 2011). "An independent basis is established when

'the in-court identification resulted from the criminal act and not the suggestive [identification procedure].'" ***Id.***

> In reviewing the propriety of identification evidence, the central inquiry is whether, under the totality of the circumstances, the identification was reliable. The purpose of a "one on one" identification is to enhance reliability by reducing the time elapsed after the commission of the crime. Suggestiveness in the identification process is but one factor to be considered in determining the admissibility of such evidence and will not warrant exclusion absent other factors. As this Court has explained, the following factors are to be considered in determining the propriety of admitting identification evidence: the opportunity of the witness to view the perpetrator at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the perpetrator, the level of certainty demonstrated at the confrontation, and the time between the crime and confrontation. The corrupting effect of the suggestive identification, if any, must be weighed against these factors. Absent some special element of unfairness, a prompt "one on one" identification is not so suggestive as to give rise to an irreparable likelihood of misidentification.

***Commonwealth v. Kearney***, 92 A.3d 51, 65 (Pa.Super.2014), *appeal denied*, 101 A.3d 102 (Pa.2014).

Although the CI did not identify Appellant in a photo array, she positively identified him at the preliminary hearing while he was handcuffed, wearing an orange jumpsuit and sitting next to his co-defendant at the defense table. Regarding this identification, the suppression court reasoned:

> In reviewing [the reliability factors enumerated in ***Kearney, supra***], the [c]ourt cannot conclude that the identification of [Appellant] at the preliminary hearing was so suggestive as to give rise to an irreparable likelihood of misidentification. When the incident occurred, the CI viewed [Appellant] from a profile position. She did not

- 7 -

have an opportunity to view his whole face. She had not previously met [Appellant]. The full face photograph of [Appellant] set forth in the array did not produce an identification. At the preliminary hearing, however, and as explained by the Commonwealth without objection by [Appellant], the CI had an opportunity to view [Appellant] in person from a profile position, as well as a full frontal position.

Certainly, the CI had an opportunity to view [Appellant] at the time of the crime. While she was paying some attention, she was certainly not paying entire attention in light of the fact that it was a quick transaction and she was dealing with two individuals. Further, [Appellant] was in front of her while she was in the back seat. She did describe [Appellant] as being a light-skinned black male with possibl[y] a goatee. There is nothing in the record to lead the [c]ourt to conclude that there was any level of uncertainty by the CI when she identified [Appellant] at the preliminary hearing and while there is some level of suggestiveness, the [c]ourt cannot conclude that under all of the circumstances the identification was so suggestive as to give rise to an irreparable likelihood of misidentification. This conclusion is bolstered by the fact that the witness was not willing to simply identify anyone at the array. The integrity of the identification process is evident.

Accordingly, [Appellant's] omnibus pretrial motion in the nature of a motion to dismiss and motion to suppress will be denied.

Omnibus Pretrial Motion Opinion and Order, filed January 14, 2015, at 11-12.

The trial court's findings are supported by the record and the legal conclusions drawn therefrom are not error.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/28/2016